FISHER and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*May 6—June 7, 1949.*

For the appellants there was a brief by *Bie, Welsh, Trowbridge & Wilmer* of Green Bay, and oral argument by *Walter T. Bie.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

HUGHES, J.    The question presented is whether there is evidence to support the finding of the commission that at the time of his death Knutson was an employee of Lester Fisher.

On October 30, 1946, an explosion aboard the tug "Vivian" blew Knutson into the lake, causing him to drown.

Mr. Fisher was the only witness before the commission and the testimony was not in dispute. At the time of the hearing before the commission Fisher was the owner of a fish warehouse at Marinette. He also owned two fishing tugs, the "Jackie" and the "MMC." In October of 1946 he owned the "Jackie" and the tug "Vivian."

On October 8th Knutson and one Olson approached Fisher and proposed that they operate the tug "Vivian" which had been idle for about two months. Fisher thought they wished to hire out, Knutson having previously been in his employ on a day-wage basis, so he offered them $7 per day. They said that they did not wish to work for wages, but would prefer to run the boat for a share of the take, it being understood that the fish would be sold to Fisher at the current market price. It was finally agreed that there would first be deducted from the proceeds of the sale of the fish $5 per week for oil used in operating the tug and that, of the remainder, Olson and Knutson would each get twenty-five per cent, Fisher fifty per cent. Fisher had procured nets from one Nylund for use on the "Vivian" and split his share with Nylund.

The arrangement was admittedly loose. The appellant Fisher testified that there was no thought of losses arising from the business. It is quite obvious that if the tug were lost in a storm Nylund certainly had done nothing that would have obligated him to share in the loss. Likewise, in the absence of negligence on the part of Knutson or Olson there would probably be no liability on their part for such loss. Certainly there was no agreement that Olson, Knutson, or Nylund would share in such loss as partners.

Fisher testified that he did not know whether Olson and Knutson were partners, employees, or independent contractors.

While partnerships may be entered into without formality, there must be an intent on the part of the parties to be partners and to be bound as such.

We are of the opinion that the foregoing recited facts, together with the testimony of Fisher that Knutson had formerly worked for him both on the boats and at the fish warehouse for wages, give rise to the presumption that Knutson was re-employed and that instead of fixed wages he was to receive a share of the receipts.

The conclusion of the commission is further supported by the testimony of Fisher that he had the right to direct the fishing operations and that the only reason he did not do so was that the two aboard the tug were better acquainted with the good fishing grounds than he was.

The inferences drawn by the commission are amply supported by the evidence.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., took no part.